```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------X

Harwinder Vilkhu,
                                              06-CV-2095
                    Plaintiff,                (CPS)(JO)

     - against -

The City of New York, Police Officer          MEMORANDUM
and/or Sergeant Hoehl, and Police Officers    OPINION AND
John Does # 1-4                               ORDER

                    Defendants.
---------------------------------------------X
```

SIFTON, Senior Judge.

    Plaintiff Harwinder Vilkhu commenced this action on May 5, 2006, against defendants The City of New York, Police Officer and/or Sergeant Hoehl, and Police Officers John Does #1-4. The Complaint was amended on April 10, 2007 to add as defendants Police Officer and/or Sergeant James Long, Police Officers Jeffrey Cline, Stephen Samartino, Adam Jangel, and Police Officers John/Jane Does #1-10. Plaintiff alleges that while sitting on a bench on the York College campus in Queens, he was grabbed by defendant police officers with no reason given, beaten and subjected to cursing and humiliation including ethnic slurs. Plaintiff alleges violations of 42 U.S.C. § 1983 and § 1981 and the New York State Constitution, Art. I, § 12. Plaintiff also brings state law claims of assault, battery and negligence, including negligent hiring and retention. Now before this Court is plaintiff's appeal of the June 6, 2007 and June 15, 2007,

orders of Magistrate Judge James Orenstein compelling plaintiff to be subject to a physical examination under Fed. R. Civ. P. 35,[1] as well as defendants' cross-appeal of the magistrate judge's June 21, 2007, denial of their request that the examination take place in New York rather than in Philadelphia. For the reasons set forth below, the magistrate's orders are affirmed.

## Background

The following facts are taken from plaintiff's Amended Complaint, the record of the proceedings before the magistrate judge, and submissions of the parties in connection with this motion. Disputes are noted.

*Factual History*

On May 8, 2005, plaintiff Vilkhu, a carpenter and manual laborer who lived in Queens, New York, states that he was sitting on a bench on the campus of York College and talking on his cell phone about his day's work, when he was grabbed by the collar and forcefully moved toward the gate of the campus by New York City

---

[1] Fed.R.Civ.P. 35(a) provides, in pertinent part:

ORDER FOR EXAMINATION. - When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner.... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

Police Department ("NYPD") officers. The officers, soon joined by two additional officers, repeatedly smashed a flashlight into plaintiff's groin; repeatedly rubbed and squeezed his penis; repeatedly cursed at him using ethnic slurs; and handed him a summons signed by defendant Hoehl. Defendants dispute plaintiff's version of events. Defendants state that officers had been called to the campus to help control an overflow crowd at a concert, that plaintiff had been asked and had repeatedly refused to move on, and that he had shouted epithets at the officers for five or ten minutes. After a 911 call was made and an ambulance arrived on the scene, plaintiff was taken to a local hospital where he was treated for his injuries on May 8 through May 9, 2005, as well as on later occasions, and continues to receive treatment to this day. As a result of his injuries, plaintiff states that he continues to suffer physical pain, including herniated and damaged muscles, medical expenses, lost wages, reputational injury and psychological pain and suffering. He states that was unable to return to work for many months, is still unable to perform many tasks such as climbing ladders and lifting heavy items, and still experiences great pain during physical activities, including sexual relations.

*Procedural History*

Plaintiff filed the original Complaint on May 5, 2006. An initial scheduling conference was held before Magistrate Judge

Orenstein on September 11, 2006, which established the following dates for the completion of discovery: fact discovery to be completed by December 22, 2006, plaintiff's expert report due by December 22, 2006, defendants' rebuttal expert report due by January 30, 2007, and expert depositions to be completed by February 28, 2007.  Thereafter, amended scheduling orders were entered on September 22, 2006; October 20, 2006; and January 23, 2007.[2]  On April 10, 2007, plaintiff filed an Amended Complaint, joining new defendants and adding additional claims.  On April 13, 2007, Magistrate Judge Orenstein issued a Fourth Amended Case Management and Scheduling Order that included the following new deadlines, to be modified "only upon a timely showing of good cause": plaintiff's expert report due on May 3, 2007; defendants' rebuttal expert report due by June 4, 2007; and expert depositions to be completed by June 15, 2007.

On May 23, 2007, defendants moved for an order (1) requiring plaintiff to submit to a physical examination pursuant to Federal Rule of Civil Procedure 35 and (2) extending the expert discovery schedule to allow for the unexpected hospitalization of Dr. Joseph Davis, the proposed examiner.  Defendants argue that because plaintiff has placed his medical condition in controversy a physical examination is appropriate.  Plaintiff opposed

---

[2] In the January 23, 2007 Third Amended Case Management and Scheduling Order, the magistrate judge advised the partes that the new deadlines "will be enforced, and in the light of the history of this case will not be modified absent extraordinary circumstances."

defendants' motion, citing the court's January 23, 2007, order and pointing out that: (1) defendants had waited until long after the close of fact discovery date of April 15 that had been established by that order, and seven business days before their expert report was due to make the request; and (2)that the proposed schedule would extend expert discovery by another two months, to August 15, 2007.  Counsel noted that plaintiff will offer no expert opining on his present condition; and that defendants have been aware of plaintiff's claim since the inception of the action and have received voluminous documentation of plaintiff's medical condition around the time and after the May 8, 2005, incident in question, including depositions of four treating physicians.

On June 6, 2007, at oral argument before the magistrate judge, defendants stated that the examination was required because plaintiff was claiming an ongoing injury, and defendants had learned only recently that plaintiff suffers from a hernia, or defect in the abdominal wall, that could explain his current symptoms and yet not be attributable to the events of May 8, 2005.  Transcript of June 6, 2007, Oral Argument ("June 6 Tr.") at 7-11. The magistrate judge granted defendants' motion, provided (1) that the examination take place by June 27, 2007; (2) that defendants bear the associated costs; and (3) that it take place at a location near plaintiff's current residence in

Pennsylvania on a day when he was not scheduled to be working.[3]

On June 12, 2007, plaintiff's counsel wrote to defendants informing them that, since plaintiff had now decided not to seek an award of damages arising from any current physical pain and suffering, there was no need for a physical examination. Exh. B, Defendants' Letter, dated June 13, 2007 ("June 13 Letter"). On June 13, 2007, defendants informed the court of its position that an examination was in fact still necessary in view of a dispute between the parties as to the definition of the word "current." *See* June 13 Letter. In their letter in reply, dated June 14, 2007 ("June 14 Letter"), plaintiff's counsel stated that because plaintiff's current physical pain and suffering "is simply not 'in controversy,'" well-settled caselaw established that "a Rule 35 physical examination is not warranted." *See* June 14 Letter. Plaintiff's damages would be limited to the time period reflected in medical records already produced. *Id.*

On June 15, 2007, the magistrate judge reaffirmed his June 6, 2007, finding that the Rule 35 examination was capable of shedding light, "one way or another, on [plaintiff's] remaining claims about past harms"; as bolstering or undermining his

---

[3] The magistrate judge summarized defendants' reasoning: "So to the extent that this is an untimely request, the basis would be, after the close of fact discovery when this should have been done, you learned a new fact that you might put in issue and, therefore, you need an examination of it. . . ." June 6 Tr. at 8.

credibility as a witness regarding "continuing physical consequences of the incident at issue"; and as reasonably calculated to lead to the discovery of admissible evidence regarding liability for past harms. Memorandum and Order dated June 15, 2007 ("June 15 Order") at 1-2.

On June 19, 2007, plaintiff informed the court of his intention to appeal the June 6, 2007 and June 15, 2007 orders, pursuant to Rule 72(a), and requested adjournment of the current deadlines. On the same day defendants informed the court of their refusal to consent to such adjournment, and of their insistence on the examination going forward. On June 20, 2007, the present appeal was filed.

On June 21, 2007, a telephone status conference was held at the conclusion of which the magistrate judge granted a stay during the appeal as requested by the plaintiff, and denied defendants' request to have the Rule 35 examination take place in New York instead of Philadelphia. Transcript of June 21, 2007, Status Conference("June 21 Tr.") at 19.

## Discussion

*Standard of Review*

Non-dispositive motions decided by a magistrate judge are to be modified or set aside by the district judge assigned to the case only where "the magistrate judge's order [is] found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a).

"Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.1990); *see also Federal Ins. Co. v. Kingsbury Properties, Ltd.*, 1992 WL 380980, at *2 (S.D.N.Y.1992) ("Pretrial matters involving discovery are generally considered nondispositive since they do not resolve the substantive claims for relief alleged in the pleadings.").

Under Rule 72(a), "[a] finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Products of Cal., Inc. v. Constr. Laborers Pension Trust for South. Cal.*, 508 U.S. 602, 622, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (citing *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y.2000) (citation and internal quotations omitted).

Under Federal Rule of Civil Procedure 26,

> parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. Proc. 26(b). The scope of discovery is subject to limitations, such as whether the burden or expense of a discovery request "outweighs its likely benefit" or if the request is unreasonably cumulative or duplicative. See Fed. R. Civ. Proc. 26(b)(2)(C).[4]

*Plaintiff's Claims*

*1. Rule 35 Examination*

Plaintiff argues that the magistrate judge's decision to grant defendants' request for a Rule 35 examination was clearly erroneous because the magistrate judge relied on the standards of Rule 26 rather than the requirements of Rule 35.

"A plaintiff...who asserts mental or physical injury . . . places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury."

---

[4] Federal Rule of Civil Procedure 26(b)(2)(C) specifically provides that

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

Fed. R. Civ. Proc. 26(b)(2)(C).

*Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). "The 'in controversy' and 'good cause' requirements are not simple formalities and are met neither by the mere conclusory allegations of the pleadings - nor by mere relevance to the case . . . . " *Curtis v. Express, Inc.*, 868 F.Supp. 467 (N.D.N.Y. 1994)( citing *Schlagenhauf*, 379 U.S. at 118). "The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b)... there must be greater showing of need under Rule . . . 35 than under the other discovery rules." *Schlagenhauf*, 379 U.S. at 118. Rule 35 therefore "[requires] an affirmative showing by the movant that each condition as to which examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* "Whether the requisite showing has been made in a particular case is within the 'sound discretion' of the court." *Cauley* v. *Ingram Micro, Inc.,* 216 F.R.D. 241, 243 (W.D.N.Y. 2003).

Plaintiff argues that a Rule 35 physical examination "is simply not warranted" because Vilkhu's "current physical pain and suffering is not 'in controversy.'" June 14 Letter. Plaintiff has offered to withdraw his claims for damages due to ongoing

pain and suffering.[5] Wang Declaration, Exhibit 1. Plaintiff emphasizes his willingness to stipulate to the time period for which he will seek damages, beginning on May 8, 2005, the date of the alleged injury and continuing until May 23, 2006, the date when plaintiff last saw a doctor regarding his injuries. Austin Declaration, Exhibit 1. As defendants have pointed out, plaintiff was diagnosed with a hernia, a condition not caused by trauma in July 2005. June 6 Tr. At 7. Thus, plaintiff's medical condition is still in controversy even if the parties stipulate that damages are only being sought for the time period between May 2005 and July 2006. Hence, as Judge Orenstein correctly noted, "a physical examination will shed light, one way or another, on his remaining claims about past harms." June 15 Memorandum and Order; *see also Schlagenhauf,* 379 U.S. at 119 (noting that it would have been reluctant to set aside the Rule 35 examination where past harm is at issue if the only examination ordered had directly aligned with the allegations).

Plaintiff also argues that physical examination would be intrusive because it would be reminiscent of the events of May 8, 2005, in that he would be "subjected again to the poking and prodding and . . . examinations of his genitalia..." June 21 Tr.

---

[5] Plaintiff relies on the Second Circuit's holding in *Winters v. Travia*, denying the Rule 35 examination when plaintiff withdrew her claim for current physical pain and suffering. However, the plaintiff in *Winters* stated that her "physical condition is not and has never been involved"; that is not the case here. *Winters v Travia*, 495 F2d 839, 840-841 (2d Cir. 1974).

at 12-13; he protests that the "invasive examination of one of the most intimate parts of his anatomy [would] allow defendants' physician to discover adverse information about him for disclosure to defendants, the very parties who originally violated plaintiff. Plaintiff Reply Memorandum ("Pl. Reply Memo") at 13. Although this court recognizes a urology examination is intrusive by nature, plaintiff has placed his physical condition in controversy and as a result, the examination is appropriate.

It is also clear from the proceedings before the magistrate judge on June 6, 2007 and June 21, 2007 as well as his decision, dated June 15, 2007, that he did not rely solely on the Rule 26 relevance standard in granting defendants' motion. While the magistrate judge did state that the examination is "reasonably calculated to lead to the discovery of admissible evidence regarding liability for past harms," he also found that "a physical examination will shed light...on his remaining claims about past harms." June 15 Memorandum and Order. As the magistrate judge he did not simply act on a finding of relevancy. The instant action is certainly one in which plaintiff has asserted "mental or physical injury" and "place[d] that mental or physical injury clearly in controversy and provide[d] the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Schlagenhauf*, 379

U.S. at 119. Accordingly, the magistrate judge's decision was not clearly erroneous.

*2. Rule 16(b) - "Good Cause"*

To reopen discovery, a plaintiff must show "good cause" for failing to adhere to the court's scheduling orders. *See Gray v. Town of Darien*, 927 F.2d 69, 74 (2d Cir. 1991); Fed. R. Civ. P. 16(b). "Good cause may be shown if a party cannot, despite her due diligence, reasonably meet the schedule. The requisite good cause is based on factors such as the diligence *vel non* of the party requesting an extension, bad faith *vel non* of the party opposing such extension, the phase of the litigation and prior knowledge of and notice to the parties." *Gavenda v. Orleans County,* 1996 WL 377091, at *1 (W.D.N.Y. 1996).

Plaintiff argues that "the magistrate judge's decision to order the Rule 35 examination despite the untimeliness of the request is contrary to law," contending that the judge was "required to demand that defendants establish 'good cause' under . . . [Fed. R. Civ. Pro.] 16(b) to re-open fact discovery." Pl. Reply Memo at 14. Here, defendants provided an explanation for the delay in requesting a Rule 35 examination to the magistrate judge during the lengthy oral argument held on June 6, 2007. Defendants explained that the delay was due to defendants learning new information after the closing of fact discovery that plaintiff has "an umbilical hernia . . . a defect in the

abdominal wall . . . that [may have] gotten worse [and] could be an explanation of his current symptoms, and that's a fact that the jury should know." June 6 Tr. at 7-8.  Although medical records already produced by plaintiff indicated the presence of that very condition, defendants argue that the records were not clear, and only after taking the deposition of one of the doctors, did they realize that the hernia diagnosis went to the issue of causation and ongoing injuries.  As the fact-finder, the magistrate judge credited defendants' reason.  Defendants also argued that they believed that their request fell under expert discovery, which had not yet closed. The magistrate judge found the request to be part of fact discovery, June 6 Tr. 4-5, but also recognized that reasonable minds could differ.  *Id.* at 6.  Accordingly, there is no basis in the record upon which to find his decision was an abuse of discretion and the magistrate judge's decision is affirmed.

*Defendants' Cross-Appeal*

Defendants appeal the magistrate judge's denial of their request that the examination take place in New York rather than in Philadelphia.  Defendants argue that the magistrate judge abused his discretion when he affirmed his June 6, 2007, order specifying that the Rule 35 take place in Philadelphia on a day when plaintiff was not working, accommodating plaintiff's needs.  According to defendants, plaintiff is no longer entitled to such

accommodation, because of plaintiff's failure to comply with the order during the three weeks between the date of the order, June 6, 2007, and the deadline for the exam contained therein, June 27, 2007. Defendants' Memo at 15-16. Defendants do not provide any legal support for their position.

As already noted, trial courts are accorded broad discretion to manage the pre-trial phase of litigation. *Gavenda*, 1996 WL 377091, at *1 (W.D.N.Y. June 19, 1996). The magistrate judge's denial of defendants' request as to the location of the examination was not clearly erroneous. Accordingly, defendants' cross appeal is denied and the magistrate judge's decision is affirmed.

## Conclusion

For the reasons stated above, the magistrate judge's orders of June 6, 2007, June 15, 2007, and June 21, 2007, are affirmed in their entirety. The Clerk is directed to transmit a copy of the within to all parties and the magistrate judge.

SO ORDERED.


Dated :   Brooklyn, New York
          September 13, 2007


                By:  /s/ Charles P. Sifton (electronically signed)
                            United States District Judge