UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X

Harwinder Vilkhu,                                    06-CV-2095
                                    Plaintiff,       (CPS)(JO)

        - against -

The City of New York, Police Officer and/ or         MEMORANDUM
Sergeant Hoehl, Police Officer and/ or               OPINION &
James Long, Police Officers Jeffrey Cline,           ORDER
Stephen Samartino, Adam Jangel, and Police
Officers John/Jane Does # 1-10,
                                    Defendants.
-------------------------------------------X

SIFTON, Senior Judge.

        Plaintiff Harwinder Vilkhu ("Vilkhu") commenced this action

on May 5, 2006, against defendants the City of New York ("City"),

Police Officer and/or Sergeant Hoehl ("Hoehl"), and Police

Officers John Does #1-4.  Plaintiff amended his complaint on

April 10, 2007, adding as defendants Police Officer and/or

Sergeant James Long ("Long"), Police Officers Jeffrey Cline

("Cline"), Stephen Samartino ("Samartino"), Adam Jangel

("Jangel"), and Police Officers John/Jane Does #1-10[1]

(collectively, "defendants").  Plaintiff has eleven claims: (1)

excessive force in violation of 42 U.S.C. § 1983[2] against the

_____

        [1] Plaintiff has not served or identified Police Officers John/Jane Does
#1-10, who are listed as defendants in his amended complaint.  Because it is
undisputable that plaintiff had sufficient time to identify the John/Jane Doe
defendants and discovery is now complete, I dismiss plaintiff's claims against
John/Jane Does #1-10 without prejudice.  *See Genia v. New York State Troopers,*
03-CV-0870, 2007 WL 869594, at *1 n.1 (E.D.N.Y. 2007).

        [2] 42 U.S.C. § 1983 states in relevant part:

        Every person who, under color of any statute, ordinance, regulation,
        custom, or usage, of any State . . . subjects, or causes to be

officer defendants; (2) deprivation of equal protection in
violation of 42 U.S.C. § 1983 against the officer defendants; (3)
intentional discrimination in violation of 42 U.S.C. § 1981[3]
against the officer defendants; (4) false arrest and false
imprisonment in violation of 42 U.S.C. § 1983 against all
defendants; (5) excessive force in violation of Article I, § 12
of the New York State Constitution[4] against all defendants; (6)
denial of equal protection in violation of Article I, § 11 of the
New York State Constitution[5] against all defendants; (7) false

---

subjected, any citizen of the United States . . . to the deprivation of
any rights, privileges, or immunities secured by the Constitution and
laws, shall be liable to the party injured in an action at law . . .

42 U.S.C. § 1983.

[3] 42 U.S.C. § 1981 states in relevant part:

All persons within the jurisdiction of the United States shall have the
same right in every State . . . to the full and equal benefit of all
laws and proceedings for the security of persons and property as is
enjoyed by white citizens . . .

42 U.S.C. § 1981.

[4] Article I, Section 12 of the New York State Constitution states in
relevant part:

The right of the people to be secure in their persons, houses, papers
and effects, against unreasonable searches and seizures, shall not be
violated, and no warrants shall issue, but upon probable cause,
supported by oath or affirmation, and particularly describing the place
to be searched, and the persons or things to be seized.

N.Y. Const., art. I, § 12.

[5] Article 1, § 11 of the New York State Constitution states:

No person shall be denied the equal protection of the laws of this state
or any subdivision thereof.  No person shall, because of race, color,
creed or religion, be subjected to any discrimination in his or her
civil rights by any other person or by any firm, corporation, or
institution, or by the state or any agency or subdivision of the state.

arrest and false imprisonment in violation of Article I, § 12 of
the New York State Constitution against all defendants; (8)
assault against defendants Hoehl and City; (9) battery against
defendants Hoehl and City; (10) negligence against defendants
Hoehl and City; and (11) negligent hiring and retention of
employment services against the City.  Plaintiff seeks
compensatory damages, punitive damages, as well as attorneys'
fees and costs.  Now before this Court is defendants' motion for
partial summary judgment.  For the reasons that follow,
defendants' motion is denied in part and granted in part.

## Background

The following facts are drawn from the parties' Local Rule
56.1 statements and papers submitted in connection with this
motion.  Disputes are noted.

Plaintiff Vilkhu is a naturalized United States citizen of
Indian origin.  Vilkhu Deposition ["Vilkhu Dep."] 144,
Plaintiff's Exhibit ["Pl. Exh."] 1; Defendants' Exhibit ["Def.
Exh."] A,B.  His native language is Punjabi.  Vilkhu speaks
English, but is not fluent and has an accent.  Deposition of
Seargant Hoehl ["Hoehl Dep."] 142, Pl. Exh. 4; Def. Exh. D.
Vilkhu has received training in the field of carpentry.  Viklhu
Dep. 209.

Defendants Hoehl, Jangel, Samartino, Long and Cline are

_____

N.Y. Const., art. I, § 11.

police officers who are or were assigned to the 103rd Precinct in
Queens.  Hoehl Dep. 30-36.

On May 8, 2005, Vilkhu was visiting his uncle, when he
received a phone call from friends who asked him to meet them at
York College to see a Punjabi or Indian cultural show.  Vilkhu
Dep. 50; Transcript of 50-H Hearing ["50-H Tr."] 15, Pl. Exh. 2.
The show took place at the Performing Arts Center ("PAC") on
campus and tickets were sold to the public.  50-H Tr. 18-19;
Deposition of York College Public Safety Officer Rozetta
Thorbourne ["Thorbourne Dep."] 39, 78, Def. Exh. G.

Vilkhu drove to campus, parked his car, and then proceeded
to the PAC.  Vilkhu Dep. 51-53.  According to Vilkhu, he believed
that his friends had already bought a ticket for him.  Vilkhu
Dep. 53; 50-H Tr. 18.  When his friends did not meet him at the
entrance of the PAC, he stood in the line that had formed outside
the PAC in order to purchase a ticket.  *Id.*  There were about 150
other people on line, most of whom appeared to be of Indian
origin, waiting to buy tickets.  Vilkhu Dep. 54; 50-H Tr. 21.

While waiting in line, an announcement was made that the
house was full. Vilkhu Dep. 55; 50-H Tr. 20.  Simultaneous to
this announcement, plaintiff received a call from his boss about
the construction project on which he was working. Vilkhu Dep. 55.
Because the line was noisy, plaintiff told his boss to hold,
walked over to a bench outside the PAC, sat down and then resumed

the call. *Id.* 57.

Because there was a large crowd trying to enter the building in a disorderly fashion, the campus security officers closed the doors of the building in order to avoid a stampede. Thorbourne Dep. 95. Defendants state that officers on patrol in the 103rd Precinct received a call alerting them to a disorderly group at York College. Hoehl Dep. 95. The parties dispute the timing of the call and the reasons for it. Defendants Hoehl, Jangel and Samartino, who were assigned to police cruiser 2292, and defendants Long and Cline, assigned to police cruiser 2471, responded to the call. Hoehl Dep. 93-95; Deposition of Jeffrey Cline ["Cline Dep."] 85, Def. Exh. F.

Defendant Hoehl states upon the arrival of the cruisers, one of the campus guards asked the officers to disperse the crowd. Hoehl Dep. 101. The officers then proceeded to walk through the crowd and instruct people to leave the premises. *Id.* 114.

While sitting on the bench and talking on the phone, plaintiff was approached by two uniformed officers, Hoehl and Jangel. Vilkhu Dep. 59; Hoehl Dep. 127-28; Recording of 911 Call ["911 Call"], Def. Exh. H; Transcript of 911 Call ["911 Tr."], Def. Exh. I. The officers picked Vilkhu up by the collar and took him off campus, outside the campus gate on the sidewalk. Vilkhu Dep. 74; Hoehl Dep. 131-136. After they were outside the

gate, at an unspecified point in time, officers Cline and Long were observed to be near by. Vilkhu Dep. 79-80; Hoehl Dep. 136, 159. After they were outside the gate, Hoehl went to Cline's and Long's vehicle to perform a warrant check on Vilkhu prior to issuing him a summons. Hoehl Dep. 153. Hoehl signed a summons for disorderly conduct. Hoehl Dep. 148. Vilkhu called 911 and an ambulance arrived on the scene. Vilkhu Dep. 97-98, 115-16; 911 Call; 911 Tr.

Although the parties agree that the above events took place, they dispute their nature and sequence.

According to defendants, and disputed by plaintiff, when Hoehl and Jangel approached Vilkhu while he was sitting on the bench, he was told to leave the area, but refused to comply, stating that he would leave when he finished his call. Hoehl Dep. 127. Only after Vilkhu failed to comply with at least one direct order to leave the area, was Vilkhu picked up by the collar and brought outside the campus gate. Hoehl Dep. 131-36. According to defendants, when Hoehl walked away to run the warrant check, Vilkhu stood outside the gate and shouted epithets and curses at him until Hoehl returned. Hoehl Dep. 142-48.

According to plaintiff, and disputed by defendants, while he was sitting on the bench, he was holding his cell phone in his left hand to his left ear. *Id*. 58-59, 74-75. He was approached from his left side by two uniformed white officers, one clean-

shaven officer, Hoehl, and one officer with a mustache. *Id.*
Vilkhu states that the officers did not say anything to him prior
to lifting him by the collar. Vilkhu Dep. 59, 68. After the
officers grabbed him, he asked that he be given two minutes to
finish the phone call and then he would leave. *Id.* 74. Neither
officer responded to his request. *Id.*

Vilkhu states, and defendants dispute, that once the
officers pushed him outside of the campus gates and onto the
sidewalk, they began cursing at him and making insulting remarks
about his culture. Vilkhu Dep. 77; 50-H Tr. 34. Vilkhu asked
why he was being treated in such a matter. *Id.* He informed the
officers that he was a citizen and asked Hoehl for his name.
Hoehl told Vilkhu to look at the name plate. Vilkhu Dep. 81; 50-
H Tr. 33-34. As Vilkhu bent down, Hoehl took his flashlight and
repeatedly struck Vilkhu in his groin. *Id.* While Hoehl struck
Vilkhu in his groin area, the mustached officer was standing
behind Vilkhu's back. *Id.* 83. Vilkhu doubled over in pain.
Hoehl then asked for picture identification. *Id.* 87. Vilkhu
reached for his wallet in his back pocket, but when he reached
behind his back, the mustached officer grabbed his hand and
twisted it. *Id.* 88, 92. Hoehl then attacked Vilkhu again,
grabbing his groin area. *Id.* 88-90, 92. After the second
attack, the mustached officer laughed at Vilkhu and let go of his
arm. *Id.* 90. Vilkhu was then able to retrieve his driver's

license and gave it to Hoehl. 50-H Tr. 39. Vilkhu states that
after taking his license, Hoehl and one of the clean-shaven
officers who was a bystander (either Cline or Long) walked away.
Vilkhu Dep. 92-93. Vilkhu then called 911 to request an
ambulance, but the call was disconnected. *Id.* 97-98. While he
made the call, two of the officers stood near him, talking to
each other. *Id.* 94. Vilkhu states, and defendants dispute, that
when Hoehl returned and Vilkhu reached for the summons, Hoehl
assaulted him several times with his flashlight. *Id.* 98.

Vilkhu called 911 a second time. During this phone call he
expressed to the dispatcher that he was in pain, that he needed
an ambulance and that the cops had hit him. Vilkhu Dep. 115,
394. He reported the police car number 2471 to the dispatcher.
Cline Dep. 118; Deposition of James Long ["Long Dep."] 151, Pl.
Exh. 7; 911 Call. The 911 operator connected the call to an
Internal Affairs Bureau (IAB) detective. The parties dispute
whether Vilkhu provided a chronological account of the events
that plaintiff alleges took place to the dispatcher and IAB
detective.

After Vilkhu called 911, an ambulance arrived. Emergency
Medical Technician ("EMT") Von Davis observed that Vilkhu was
upset and crying, and appeared injured. Deposition of Von Davis
["Davis Dep."] 51-52, 69, Pl. Exh. 11. Vilkhu was taken to Mary
Immaculate Hospital in Queens, New York. Vilkhu Dep. 167; Davis

Dep. 37. He was released later that night. Vilkhu Dep. 172.

The next day, Vilkhu called 911 again because of the pain he was suffering and went to the hospital for treatment. *Id.* 173. That same day, Vilkhu received a phone call from IAB Officer Del Rosario to discuss plaintiff's complaint. Recording of IAB Interview, Def. Exh. J; Transcript of IAB Interview ["IAB Tr."], Def. Exh. K. On June 6, 2005, he was interviewed by Investigator Pena of the Civilian Complaint Review Board (CCRB). Transcript of CCRB Interview, Def. Reply Exh. J.

## Discussion

A court must grant a motion for summary judgment if the movant shows that "there is no genuine issue as to any material fact" and that "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.*

The party seeking summary judgment has the burden of

demonstrating that no genuine issue of material fact exists.
*Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987). In
order to defeat such a motion, the non-moving party must raise a
genuine issue of material fact. Although all facts and
inferences therefrom are to be construed in the light most
favorable to the non-moving party, the non-moving party must
raise more than a "metaphysical doubt" as to the material facts.
*See Matsushita*, 475 U.S. at 586; *Harlen Assocs. v. Vill. of
Mineola*, 273 F.3d 494, 498 (2d Cir. 2001). The non-moving party
may not rely on conclusory allegations or unsubstantiated
speculation. *Twin Labs., Inc. v. Weider Health & Fitness*, 900
F.2d 566, 568 (2d Cir. 1990). Rather, the non-moving party must
produce more than a scintilla of admissible evidence that
supports the pleadings. *First Nat'l Bank of Ariz. v. Cities
Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power
Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). In
deciding such a motion the trial court must determine whether
"after resolving all ambiguities and drawing all inferences in
favor of the non-moving party, a rational juror could find in
favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394,
398 (2d Cir. 2000).

Defendants argue that there are no genuine issues of
material fact with respect to the following claims, each of which
requires summary judgment to be granted in their favor: (1)

federal equal protection claim; (2) federal intentional
discrimination claim; (3)federal false arrest and false
imprisonment claim; (4) state constitutional claims; and (5)
state law negligence claim.[6]  I discuss each of the claims
below.[7]

*Equal Protection Claims (Second Cause of Action)*

Defendants argue that plaintiff's section 1983 equal
protection claims must be dismissed because plaintiff has failed
to identify other similarly situated individuals who were treated
differently from plaintiff.

"Section 1983 provides an instrument by which an individual
deprived of a federal right by a person acting under color of
state law may be compensated." *Eagleston v. Guido*, 41 F.3d 865,
875 (2d Cir. 1994)(citing *Parratt v. Taylor*, 451 U.S. 527, 535
(1981)).  "It is well established that in order to state a claim
under § 1983, a plaintiff must allege (1) that the challenged
conduct was attributable at least in part to a person acting
under color of state law, and (2) that such conduct deprived the

---

[6] Plaintiff argues that defendants' motion for summary judgment should
be denied because it is untimely.  At the final pretrial conference, held on
October 18, 2007, Magistrate Judge Orenstein noted on the record that the
defendants wished to file a motion for summary judgment well after the August
10, 2007 deadline set in the scheduling order.  Although defendants should
have adhered to the scheduling order or requested an extension to file a
motion for summary judgment, I decline to deny their motion on procedural
grounds.

[7] I need not address defendants' motion for summary judgement on
plaintiff' negligent hiring and retention claim because plaintiff withdrew the
claim against the City after defendants filed the instant motion.

plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Id.* at 875-76 (quoting *Dwares v. City of New York*, 985 F.2d 94, 98 (2d Cir. 1993)).

In addition, "[t]o prevail on a selective treatment [equal protection] claim, a plaintiff must demonstrate that (1) he was treated differently from other similarly-situated individuals; and (2) the differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 110 (2d Cir. 2006) (internal quotation marks and citations omitted). However, a plaintiff need not "show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection" where plaintiff has alleged "an express racial classification, or alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus." *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001).

Plaintiff concedes that he has not shown evidence of differential treatment from similarly situated persons. However, plaintiff is not required to compare himself to a similarly

situated group since he has also alleged that the officers used an express racial classification when they singled him out because of his Indian origin and applied the neutral policy of detaining someone in an intentionally discriminatory manner. *See Pyke*, 258 F.3d 107; *see also Doe v. Village of Mamaroneck,* 462 F.Supp.2d 520 (S.D.N.Y. 2006). Accordingly, plaintiff was not required to compare himself to a similarly situated group.

Turning to the facts supporting plaintiff's equal protection claims, defendant argues that those facts alone are not sufficient to support an equal protection claim. Defendants rely on *Brown v. Croce*, 967 F.Supp. 101, 104 (S.D.N.Y. 1997), in support of their argument. In *Brown,* the Southern District held that "[w]ithout any showing of injury or damage, such claims of verbal harassment are insufficient to state a claim under § 1983." *Id.* Unlike *Brown*, in this case plaintiff has alleged that racial epithets were directed at him while he was being physically assaulted by the officer defendants. Based on the record before this Court, a reasonable juror could find that the use of racial epithets supports the determination that the defendants violated plaintiff's right to equal protection. Accordingly, defendant's motion for summary judgment on the equal protection claim is denied.

*Section 1981 Claim (Third Cause of Action)*

Defendants argue that plaintiff's Section 1981 intentional

discrimination claim should be dismissed because the facts do not support a showing of discriminatory intent.

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute...." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993), *cert. denied*, 516 U.S. 824, 116 S. Ct. 88 (1995).

Here, there is no dispute that plaintiff is a member of a racial minority. Plaintiff has alleged discrimination in the form of deprivation of the full and equal benefit of all laws and proceedings for the security of persons as enjoyed by white persons. In support of his claim that the officers intentionally discriminated against him, plaintiff has offered his own testimony that defendant officers used racial epithets while assaulting him. Defendants on the other hand, deny the use of racial slurs against plaintiff. Based on the conflicting testimony, there are material facts in dispute which a jury must decide. Accordingly, summary judgment is denied on the section 1981 intentional discrimination claim.

*Federal False Arrest and False Imprisonment Claim (Tenth Cause of Action)*

Defendant argues that plaintiff's Section 1983 false arrest

and false imprisonment claims should be dismissed because: (1) plaintiff's claim fails as a matter of law, (2) defendants' actions were privileged, and (3) defendants are entitled to qualified immunity.

Section 1983 false arrest claims derive from the Fourth Amendment right to remain free from unreasonable seizures. *Jagely v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) "'In analyzing § 1983 claims for unconstitutional false arrest, [courts] . . . have generally looked to the law of the state in which the arrest occurred.'" *Id.* at 152-153 (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004). In New York, claims of false arrest are synonymous with those of false imprisonment. *Coyle v. Coyle*, 354 F.Supp.2d 207, 211 (E.D.N.Y. 2005).

Under Section 1983, municipalities may not be held liable unless its policies or customs result in a plaintiff's constitutional injury. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). "A municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691.

Although plaintiff has included the City in his Section 1983 false arrest and imprisonment claim, plaintiff has not presented any evidence that the City had a custom or policy that caused the violation of his constitutional rights. Rather, plaintiff seeks to hold the City liable as the employer of the officers, which is

not a cognizable claim under Section 1983.  Accordingly,
plaintiff's Section 1983 false arrest and imprisonment claim
against the City is dismissed.

Turning to plaintiff's claims against the officer
defendants, in order to establish a claim for false arrest,
plaintiff must prove: (1) defendants intended to confine him; (2)
he was conscious of the confinement; (3) he did not consent to
the confinement; and (4) the confinement was not otherwise
privileged.  *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118
(2d Cir. 1995).

Defendants argue that plaintiff's claim must be dismissed
because the issuance of a summons does not constitute
confinement.

Although the issuance of a summons is not by itself
considered confinement for purposes of a false arrest claim, *see
Griffin-Nolan v. Providence Wash, Ins. Co.*, No. 05-CV-1453, 2005
WL 1460424, at *4 (N.D.N.Y. 2005)(citing New York cases); *Angel
v. Kasson*, 581 F.Supp. 170, at *177-178 (D.C.N.Y. 1983),
"[c]onduct that accompanies the issuance of an appearance ticket
certainly can constitute confinement for purposes of a false
arrest or false imprisonment claim." *Griffin-Nolan*, 2005 WL
1460424, at *4.  Here, plaintiff does not challenge the issuance
of the summons itself, but rather the defendants' conduct leading
up to and accompanying the issuance of the summons.  Accordingly,

plaintiff's claim does not fail as a matter of law.

Defendants also argue that summary judgment should be granted because the officers' actions were privileged.

Probable cause to arrest "is a complete defense to an action for false arrest," *See Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994), "whether that action is brought under state law or under § 1983." *Wyent v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996). Probable cause exists when an officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* "[T]he court looks only to the information the arresting officer had at the time of the arrest." *Pierre v. City of New York,* 05-CV-5018, 2007 WL 2403573, at *5 (E.D.N.Y. 2007)(quoting *Peterson v. County of Nassau*, 995 F.Supp. 305, 313 (E.D.N.Y. 1998)). The existence of probable cause may be determined "as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . ." *Weyant*, 101 F.3d at 852.

According to the defendants, the officers had probable cause to remove plaintiff from the York College campus and issue a summons on account of his disorderly conduct and trespassing.

New York Penal Law § 240.20(6) states a person is guilty of disorderly conduct when:

with intent to cause public inconvenience, annoyance or
alarm, or recklessly creating a risk thereof . . . [h]e
congregates with other persons in a public place and refuses
to comply with a lawful order of the police to disperse. . .

McKinney's Penal Law § 240.20(6). Because there are material

factual disputes about the timing of the defendants' order to

leave the York College campus and whether or not plaintiff defied

that order,[8] a jury must determine whether defendant officers'

actions were privileged with respect to plaintiff's alleged

disorderly conduct.

I turn next to the claim that plaintiff had trespassed on

York College property. Under New York law, a person is

---

[8] Defendants argue that Vilkhu's statements regarding the officers'
orders should be discredited because his deposition testimony contradicts
prior statements made to the 911 dispatcher in order to create issues of fact.
According to defendants, Vilkhu's original statements to the dispatcher who
answered his 911 call are admissions that he was ordered to leave campus and
support the conclusion that defendants had probable cause to issue a summons.
Plaintiff maintains that his call to 911 does not establish an admission about
alleged orders to disperse of such decisive weight as to justify judgment in
favor of the defendants as a matter of law.
    On summary judgment, courts "should not weigh evidence or assess the
credibility of witnesses." *Hayes v. New York City Department of Corrections*,
84 F.3d 614, 619 (2d Cir. 1996)(citing *United States v. Rem*, 38 F.3d 634, 644
(2d Cir. 1994). "However, when evidence is so contradictory and fanciful that
it cannot be believed by a reasonable person, it may be disregarded" on
summary judgment. *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 476 (S.D.N.Y. 2003).
    Defendants' reliance on *Jeffreys* and *Shabazz v. Pico*, 994 F.Supp. 460
(S.D.N.Y. 1998), is misplaced. In both of those cases, the plaintiffs
repeatedly changed the essential details of their claims causing the courts to
reject their testimony on summary judgment. Here, Vilkhu testified at his
deposition and 50-H hearing that he was first ordered to leave as he was
escorted away from the campus. When questioned about this alleged
inconsistency with the 911 call, Vilkhu stated that he was in great pain at
the time of the call. A reasonable juror could determine that plaintiff was
injured and had trouble communicating during the 911 call. Defendants do not
point to any other examples of Vilkhu allegedly changing the core details of
his claims. Because "there is a plausible explanation for discrepancies in .
. . [Vilkhu's] testimony," *Langman Fabrics v. Graff Californiawear, Inc.,* 160
F.3d 106, 112-113 (2d Cir. 1998), *as amended by* 169 F.3d 782 (2d Cir. 1998), I
will not disregard his testimony. Accordingly, I refrain from making any
credibility assessments and weighing the evidence.

guilty of trespass if he enters or remains unlawfully:

> in or upon premises when he is not licensed or privileged to
> do so.  A person who, regardless of his intent, enters or
> remains in or upon premises which are at the time open to
> the public does so with license and privilege unless he
> defies a lawful order not to enter or remain, personally
> communicated to him by the owner of such premises or other
> authorized person. . .

McKinney's Penal Law § 140.00(5).  There is no dispute that

plaintiff was on campus in order to attend a show at the York

College PAC.  However, the parties dispute when the license to

remain on campus terminated.  Based on the conflicting testimony

in the record, there are material factual disputes about the

communication of orders to leave the York College campus and

whether plaintiff defied those orders.  Accordingly, a reasonable

juror could determine that the officers did not order Vilkhu to

leave and that they did not have probable cause to remove him for

trespassing.

Defendants argue for the first time in their reply papers

that summary judgment should be granted because the officers are

entitled to qualified immunity.  As plaintiff correctly notes, on

summary judgment new arguments are not to be made in reply

papers.  *See Rowley v. City of New York,* 00-CV-1793, 2005 WL

2429514, at *5 (S.D.N.Y. 2005).  Because defendants have raised

this argument for the first time in their reply papers, I decline

to consider it on this motion.  Accordingly, defendants' motion

for summary judgment on the federal false arrest and false

imprisonment claim is denied.

*State Constitution Claims (Fourth, Fifth, and Ninth Causes of Action)*

Defendant argues that plaintiff's equal protection, excessive force, and false arrest and false imprisonment claims pursuant to Article 1, §§ 11 and 12 of the New York State Constitution should be dismissed because plaintiff does not have a private right of action under the New York State Constitution when his claims are remediable under federal and other state laws.

In *Brown v. State of New York*, 674 N.Y.2d 172 (N.Y. 1996), the New York State Court of Appeals recognized the availability of damages causes of action against the state for equal protection and search and seizure violations of Article 1, §§ 11 and 12 of the New York State Constitution. *Brown,* 674 N.Y.2d at 192. However, *Brown's* application has been limited by both district and state courts to situations where the plaintiffs have no alternative remedies that would protect their interests. *See e.g.,* Coakley *v. Jaffe*, 49 F.Supp.2d 615, 628-29 (S.D.N.Y. 1999)(holding that plaintiff has no right of action under the New York State Constitution because "any violation of plaintiff's right to be free from unreasonable searches or seizures can be vindicated through" plaintiff's viable Fourth Amendment claim), *affirmed by,* 234 F.3d 1261 (2d Cir. 2000); *see also Bath Petroleum Storage, Inc. v. Sovas*, 136 F.Supp.2d 52, 58 (N.D.N.Y.

2001)(holding that *Brown* was inapplicable and declining to find a private right of action under the due process clause of the New York State Constitution because "[h]ere, unlike *Brown*, Plaintiffs have stated a viable Section 1983 claim against defendants ..."); *Muhammad v. New York City Transit Authority*, 450 F.Supp.2d 198, 212 (E.D.N.Y. 2006)(stating that "recognition of a State constitutional tort is unnecessary . . . to afford plaintiff a remedy" where plaintiff has raised a claim of religious discrimination under New York Human Rights Law); *Martinez v. City of Schenectady*, 761 N.E.2d 560, 563 (N.Y. 2001) (declining to extend *Brown* because the "constitutional tort claim here is neither necessary to effectuate the purposes of the State constitutional protections plaintiff invokes, nor appropriate to ensure full realization of her rights"); *Lyles v. State*, 752 N.Y.S.2d 523, 526-27 (Ct.Cl. 2002) (holding that the "narrow" remedy provided for by *Brown* does not give the plaintiff an implied constitutional tort remedy since "the alleged wrongs could have been redressed by timely interposed common law tort claims"); *Remley v. State of New York*, 665 N.Y.S.2d 1005, 1009 (Ct.Cl. 1997) (holding that "no useful purpose would be served by implying a remedy under the [state] Constitution" because "the common-law remedy vindicates the right protected by the constitutional provision . . .").

Here, plaintiff has viable federal equal protection, false

arrest and false imprisonment, and excessive force claims against the officer defendants. The exception provided by *Brown* therefore does not apply to plaintiff's state constitution claims against the officers. Accordingly, plaintiff's Article 1, § 11 equal protection claim (5th cause of action), Article 1, § 12 excessive force claim (4th cause of action), and Article 1, § 12 false arrest and false imprisonment claim (9th cause of action) against the officer defendants are dismissed.

As part of his New York state constitution claims, plaintiff argues that the City, as the employer of the officers, is responsible for their conduct under the doctrine of respondeat superior. Because Section 1983 does not recognize respondeat superior liability, the narrow exception of *Brown* applies to plaintiff's state constitution claims against the City and they will not be dismissed.

Since the claims against the City are not dismissed as a matter of law, I turn to the facts supporting those claims. Because there are material factual disputes concerning the officers' actions, a jury must determine whether the City is liable for the defendant officers' actions under the theory of respondeat superior. Accordingly, defendants' motion for summary judgment on the state constitutional claims against the City are denied.

*State Negligence Claim (Eighth Cause of Action)*

Defendants argue that plaintiff's negligence claim against the City and Hoehl must be dismissed because plaintiff has asserted facts that, if true, would establish intentional conduct on their part.

Plaintiff argues that under Fed. R. Civ. P. 8(d)(2), he may "set out 2 or more statements of a claim . . . alternately . . ., either in a single count . . . or in separate ones." Fed. R. Civ. P. 8(d)(2).

"New York has adopted the view that, 'once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently.'" *Oliver v. Cuttler*, 968 F.Supp. 83, 92 (E.D.N.Y. 1997)(quoting *Mazzaferro v. Albany Motel Enterprises, Inc.*, 515 N.Y.S.2d 631, 632-33 (3d Dep't 1987); *accord Locke v. North Gateway Restaurant, Inc.*, 649 N.Y.S.2d 539, 540 (3d Dep't 1996)). "When a plaintiff brings excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie." *Naccarato v. Scarselli*, 124 F.Supp.2d 36, 45 (N.D.N.Y. 2000); *see also Busch v. the City of New York*, 00-CV-5211, 2003 WL 22171896, at *7 (E.D.N.Y. 2003); *Dineen ex rel. v. Stramka*, 228 F.Supp.2d 447,

454 (S.D.N.Y. 2002).[9]  Because plaintiff has alleged facts supporting excessive force, assault, and battery claims, he may not also base a claim of negligence on the same conduct.  The question is not of alternative pleadings arising out of the same conduct, but of a single set of facts which if proved can only provide the basis for one or more intentional torts (which themselves may be alleged alternatively).  Accordingly, plaintiff's negligence claim is dismissed.

### Conclusion

For the reasons set forth below, defendants' motion for summary judgment is denied in part and granted in part.  The Clerk is directed to transmit a copy of the within to the parties and the Magistrate Judge.

SO ORDERED.

Dated:    Brooklyn, NY
          May 5, 2008


By:      /s/ Charles P. Sifton (electronically signed)
                  United States District Judge

---

[9] Plaintiff argues that a jury could determine that the bystander officers were negligent because they did not intervene while plaintiff was being beaten or assist him afterwards.  This argument fails because plaintiff's amended complaint only pleads this cause of action against defendants Hoehl and the City.