UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X

Harwinder Vilkhu,                                    06-CV-2095
                                    Plaintiff,       (CPS)(JO)

        - against -

The City of New York, Police Officer and/ or        MEMORANDUM
Sergeant Hoehl, Police Officer and/ or              OPINION &
James Long, Police Officers Jeffrey Cline,          ORDER
Stephen Samartino, Adam Jangel, and Police
Officers John/Jane Does # 1-10,

                                    Defendants.

-------------------------------------------X

SIFTON, Senior Judge.

        Plaintiff Harwinder Vilkhu ("Vilkhu") commenced this action

on May 5, 2006 against defendants the City of New York ("City"),

Police Officer and/or Sergeant Hoehl ("Hoehl"), and Adam Jangel

("Jangel") (collectively, "defendants"),[1] alleging that

defendants violated his rights under 42 U.S.C. §§ 1983, 1981 and

the New York State Constitution, and raising state tort claims.

A jury trial took place between September 29, 2008 and October

14, 2008.  The jury returned a verdict in favor of plaintiff and

awarded him $20,000 in compensatory damages.  Presently before

this Court is defendant's motion for a new trial pursuant to

Federal Rule of Civil Procedure 59 ("Rule 59").  For the reasons

set forth below, defendant's motion is denied.

---

[1] On September 8, 2008, the parties stipulated to the dismissal of all
claims against defendant Police Officers James Long ("Long"), Jeffrey Cline
("Cline"), and Stephen Samartino ("Samartino") with prejudice.

**BACKGROUND**

Familiarity with the factual background of the case is presumed based on the record of prior proceedings before the undersigned. For a description of the underlying facts, *see Vilkhu v. City of New York*, No. 06-CV-2095, 2008 WL 1991099, at *1-4 (E.D.N.Y. May 4, 2008). What follows is a procedural history of the parties' relevant motions during and after trial.

Admission of "Similar Act" Evidence

By motion in limine, plaintiff sought permission to introduce at trial evidence of prior complaints against the individual defendants. I reserved decision on the application, noting that pattern evidence is appropriate where a question exists as to an individual's identity, but that no such issue had been raised. Transcript of September 25, 2008 Oral Argument at 6. At trial, during cross-examination of plaintiff, counsel for defendants engaged in a line of questioning concerning the name of the officer who allegedly assaulted plaintiff. Transcript of Trial Proceedings ("Tr.") at 196-99.[2] I summoned counsel to the

---

[2] Defense counsel questioned plaintiff as follows:

Q: Turning back to the events of May 8th, 2005. Did you see the name of the officer who hit you with the flashlight?
A: I just want -- I just went to look at it and he started hitting me.
    THE COURT: So you weren't able to read it?
    THE WITNESS: No, I could not.
    THE COURT: All right. What's next?
Q: Did you see any of the letters in his name?
A: I don't recall.
Q: Did you tell the CCRB that his name began with the letter C?
A: Perhaps.
. . .

sidebar and warned defendants that I had not realized there might

be a dispute concerning identity, and that if such a dispute

existed, the pattern of conduct evidence might be admissible.

Tr. at 200:2-7.  Subsequently, counsel for defendants again

questioned a witness concerning the identity of the officers who

allegedly assaulted plaintiff.  Tr. at 713-15.[3]  Following this

---

Q: And did you make that assertion at your CCRB interview, Mr. Vilkhu?
A: Yes, I told them C.
Q: At some point after your CCRB interview did you go to court because of the summons?
A: Yes.
. . .
Q: Can you see Plaintiff's Exhibit Two, Mr. Vilkhu:
A: Yes.
Q: And what is Plaintiff's Exhibit Two?
A: That is a copy of criminal summons which I was handed over.
Q: And do you see the name of a police officer at the bottom of the summons?
A: Yes.
Q: And can you tell us the spelling of that officer's name?
A: B, O, next I can't read it.
Q: Does it appear that the name is spelled H-O-E-H-L?
    MS. WANG: Objection Your Honor.
    THE COURT: That -- well, can you make that out on this or not, Mr. Vilkhu?  Can you make out the letters on the document?  If not, just tell us.
    THE WITNESS: No, I cannot.
    THE COURT: Could I see the lawyers up here at the side bar.

Tr. at 196:13-199:9.

    [3] Defense counsel questioned the Civilian Complaint Review Board ("CCRB") investigator assigned to Mr. Vilkhu's complaint against the officers who allegedly assaulted him as follows:

Q: At some point, did you decide that photographs might be useful in connection with this particular investigation?
A: Yes.
Q: And can you explain how you came to that determination?
A: Well, at the time of the interview with Mr. Vilkhu . . . he wasn't able to provide me with the last name of the officer that committed the misconduct.  And he, he only said that the officer that committed the misconduct had the his [sic] last name started with the letter C.  And he provided me with a vehicle number of the, in which the subject officer was in.  I requested the Police Department to provide me with the command to which that vehicle was assigned.  When I received the documentation saying that the vehicle was assigned to 103rd Precinct, I requested the documentation from that precinct to determine who were the

testimony, plaintiff renewed his application to introduce evidence concerning defendants' prior similar acts and to cross-examine defendants concerning those acts, Tr. at 750, and I granted the application.  Tr. at 779-82.

Omission of Nominal Damages Charge

At a charge conference held on October 9, 2008, I read my proposed charges to counsel for both sides and requested that any exceptions be taken at that time.  My proposed charges included an instruction on nominal damages, which defendants, but not plaintiff, had requested.  Tr. at 1155:6-8, 1178:5-13.  Plaintiff objected to the nominal damages charge.  Tr. at 1182:7-9.  I directed counsel for plaintiff to submit case law in support of plaintiff's position by the end of the day.  Tr. at 1182:18-20.

---

officers assigned to that vehicle.
. . .
A: The roll call is a list of officers.  It provides the names of the officers and the vehicles that they were assigned to at the time of the incident.  I was able to identify two officers as being assigned to that vehicle and when I interviewed those officers, they informed me that they were not involved at all with this incident.
Q: And who were those two officers? Do you recall?
A: Officer Cline and Officer Long.
. . .
Q: After you interviewed the officers who were assigned to that vehicle, what did you do?
A: At that point, I had no idea who the officers could be.  I decided to request Mr. Vilkhu's assistance in viewing photos because he was right in the sense that, or he, did -- he did make a statement.  He said that the subject officer last name starts with the letter C and was in vehicle 2471.  I was able to determine that Officer Cline was assigned to vehicle number 2471 and his last name starts with the letter C, but I had nothing further to go on.  So, I wanted Mr. Vilkhu to assist me in looking at photographs of Officer Cline and his partner and determine whether they were the officers that were actually involved in this incident because numerous officers did respond to the location.

Tr. at 713:3-715:14.

On October 10, 2008, counsel for both parties delivered their summations to the jury. Defendants argued, *inter alia*, that the evidence presented at trial showed that plaintiff had suffered no medical injury. Tr. at 1265, 1273-84, 1286-87. After summations were complete, counsel for plaintiff handed a letter to the bench setting forth plaintiff's objection to a charge on nominal damages and including relevant case law. Tr. at 1314:22-23; Letter of Kennisha A. Austin dated October 10, 2008. Defendants responded by letter dated October 13, 2008, reiterating their request for a nominal damages charge. Letter of Arthur G. Larkin and Robyn Pullio dated October 13, 2008.

On October 14, 2008, I charged the jury. I did not include an instruction on nominal damages. At sidebar, defendants took exception to the absence of the nominal damages instruction. Tr. at 1355:4-7, 22-23. I ruled that the jury would not be instructed on nominal damages because plaintiff had not sought them. Tr. at 1355:6-7. Subsequently on the same day, during its deliberations, the jury sent a note to the Court stating as follows: "How do we determine compensatory damages? (A) Guess at expenses? (B) review some reference material." Tr. at 1360:4-6. After the jury's note was read to the parties, defense counsel reiterated defendants' request for a charge on nominal damages. Tr. at 1359:18-19. I denied the request on the grounds that it was plaintiff's prerogative to request or forego a

nominal damages charge.  Tr. at 1359:20-25.[4]

**DISCUSSION**

I.  Rule 59 Standard

Rule 59 provides that a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in the in federal court."  Fed. R. Civ. P. 59(a). The Second Circuit has held that a motion for a new trial may be granted when "the jury has reached a seriously erroneous result or its verdict is a miscarriage of justice," *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (internal quotation marks and citations omitted), or the verdict is "egregious."  *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 134 (2d Cir. 1998) (quoting *Dunlap-McCuller v. Reese Org.,* 980 F.2d 153, 158 (2d Cir. 1992)).  A motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict.  The court "is free to weigh the evidence, and need not view it in the light most favorable to the verdict winner."  *DLC Management Corp.*, 163 F.3d at 134 (citing *Song v. Ives Labs, Inc.*, 957 F.2d 1041, 1047 (2d Cir. 1992)).  However, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting

---

[4] My exact ruling was as follows: "I've looked at the case law and I've been persuaded that if the plaintiff doesn't want it -- and what the plaintiff loses by not asking for it is the possibility of a recovery of his attorney's fees.  If the plaintiff decides not to ask for it, then I'm not going to put it before the jury, since it invites compromise."  *Id.*

aside the verdict and granting a new trial." *U.S. v. Landau,* 155
F.3d 93, 105 (2d Cir. 1998) (quoting *Metromedia Co. v. Fugazy,*
983 F.2d 350, 363 (2d Cir. 1992)).

II. Defendants' Claims for a New Trial

A. *Admission of Similar Act Evidence*

Defendants argue that the admission of similar act evidence
at trial was error. A district court "has wide discretion in
controlling the admissibility of testimony and other evidence,
and, absent a demonstration of abuse of discretion, its rulings
will not be disturbed." *Zahra v. Town of Southold*, 48 F.3d 674,
686 (2d Cir. 1995) (citations omitted). Under the Second
Circuit's "inclusionary interpretation" of Federal Rule of
Evidence 404(b) ("Rule 404(b)"), similar act evidence is
admissible "so long as it is relevant and it is not offered to
prove criminal propensity." *U.S. v. Pipola*, 83 F.3d 556, 565 (2d
Cir. 1996). Rule 404(b) expressly contemplates the admission of
similar act evidence to show "proof of . . . identity[.]" Rule
404(b); *see also U.S. v. Carlton*, 534 F.3d 97, 101-02 (2d Cir.
2008). Even if admissible, however, under Federal Rule of
Evidence 403 ("Rule 403"), the probative value of similar act
evidence must outweigh its potential prejudice. *See generally
Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991).

Defendants argue that the admission of similar act evidence
at trial violated both Rule 404(b) and Rule 403. First, they

contend that the identity of the officers who allegedly assaulted plaintiff was never at issue, and therefore that defendants' prior bad acts were not admissible under Rule 404(b).  Defendants overlook, however, the effect the testimony elicited at trial concerning the names of the allegedly offending officers undoubtedly had on the jury.  Plaintiff testified that two police officers accosted him, removed him from York College campus, and that one officer beat him while the other restrained him.  Tr. at 109-17.  Plaintiff further testified that two other officers were in the area, but were a "short distance" away.  Tr. 117:-8-11.  On cross-examination of plaintiff, defense counsel inquired whether plaintiff had told the CCRB investigator that the last name of the officer who had hit him began with the letter "C," and plaintiff responded affirmatively.  Tr. at 196:13-197:7.  Defendants also called the CCRB investigator as a witness, who testified that plaintiff had told him one of the offending officers' last names began with "C," that plaintiff had given him the number of the vehicle the allegedly offending officers were in, and that the vehicle whose number plaintiff had given him was assigned to Officers Cline and Long.  Tr. at 713:3-15:14.

In light of the foregoing testimony, the jury undoubtedly considered whether the two officers who dealt with plaintiff on the night in question were defendant officers Hoehl and Jangel, or whether they were non-party officers Cline and Long.  Thus,

the identity of the offending officers was placed in issue, and
pattern evidence was properly admissible under Rule 404(b).  The
fact that defendants Hoehl and Jangel testified that they were
the officers who dealt with plaintiff, Tr. at 737-45; 885-88 --
and indeed, that defendants offered to stipulate that defendants
Hoehl and Jangel were the officers who dealt with plaintiff, Tr.
at 782-83 -- did not resolve the issue of identity in the mind of
the jury, once it had been raised.  Because defendants placed
identity in issue, pattern evidence was properly admissible under
Rule 404(b).

Defendants also argue that the evidence introduced by
plaintiff was not admissible under Rule 404(b) because it was not
probative on the issue of identity.  The pattern evidence
introduced by plaintiff consisted of the testimony of an
individual named Harry Nixon, who testified that approximately
six weeks following the events leading to trial, but more than
three years prior to the trial itself, the defendant officers
accosted him, asked him for identification, hit him with "a
walkie-talkie or a flashlight," and arrested him.  Tr. at 1106-
10.  Prior to Mr. Nixon's testimony, plaintiff's counsel also
questioned the defendant officers concerning the incident with
Mr. Nixon, and the defendant officers admitted to having arrested
Mr. Nixon but denied having used excessive force against him.
Tr. at 796:7-17; 920:8-16.  Defendants argue that Mr. Nixon's

testimony is not probative on the issue of identity because Mr.
Nixon admitted that when he filed a complaint with the CCRB
following the incident, he was unable to identify the officers
who arrested him from CCRB photographs.  Tr. at 1127:19-1128:20.
In light of defendants' admission that they were the officers who
arrested Mr. Nixon, however, Mr. Nixon's inability to identify
the arresting officers from the photos shown to him by the CCRB
does not deprive Mr. Nixon's testimony of probative value.[5]

Finally, defendants argue that the similar act evidence was
unduly prejudicial, as it "carried with it the serious risk that
the jury would view the evidence as simple proof that the
officers have a 'propensity' to use flashlights in an
inappropriate way."  Def.'s Mem. In Supp. at 17.  While a risk
existed that the jury might consider the similar act evidence for
an improper purpose, I gave a limiting instruction to the jury to

---

[5] In the alternative, defendants argue that even if Mr. Nixon's
testimony was probative on the issue of identity, its probative value was
substantially reduced by several factors such that it was outweighed by its
potential prejudice.  First, defendants point again to Mr. Nixon's inability
to identify the offending officers from CCRB photos.  Next, they point out
that Mr. Nixon pleaded guilty to resisting arrest following the incident, Tr.
at 1119, which, according to defendants, weakens Mr. Nixon's claim that he was
subjected to unreasonable force.  Finally, defendants note that the CCRB
concluded that Mr. Nixon's claims against the police should be decided in the
police officers' favor, either by findings of "exonerated," "unsubstantiated,"
or "officer unidentified."  On this last point, plaintiff points out that the
CCRB's determination that Mr. Nixon's excessive force claim was
"unsubstantiated" simply means that the allegations "remain unresolved."  *See*
*generally* http://www.nyc.gov/html/ccrb/html/how.html (explaining that a CCRB
conclusion of "unsubstantiated" is not a finding on the merits) (last visited
Jan. 9, 2008).  Considering the evidence as a whole, and in light of my
discussion of the potential prejudice of Mr. Nixon's testimony below, I
conclude that my finding that the probative value of Mr. Nixon's testimony
outweighed its potential prejudice was a reasonable exercise of discretion.

consider the evidence only in connection with the issue of
identity on at least three separate occasions: (1) at the time
the defendant officers were cross-examined concerning the
incident with Mr. Nixon; (2) during Mr. Nixon's testimony; and
(3) in my substantive instructions to the jury after summations.
Tr. at 796:20-797:23; 1109:11-16; 1329:16-25.  The Second Circuit
has long recognized that cautionary jury instructions may be an
effective safeguard against undue prejudice.  *See U.S. v. Pitre*,
960 F.2d 1112, 1120 (2d Cir. 1992) (affirming admission of prior
bad acts as background to conspiracy and to establish intent and
knowledge and noting that proper limiting instructions were
given); *Ismail v. Cohen*, 706 F. Supp. 243, 253 (S.D.N.Y. 1989)
(noting that jury instruction that proof was offered solely for
intent, motive or pattern of conduct was sufficient to address
any prejudice given that "[t]he Second Circuit has repeatedly
recognized the efficacy of . . . cautionary instructions")
(citing *United States v. Danzey*, 594 F.2d 905, 915 (2d Cir.
1979), *cert. denied*, 441 U.S. 951 (1979)).

Defendants further argue that notwithstanding my limiting
instructions, the similar act evidence was unduly prejudicial
because I erred by precluding evidence that would have impeached
Mr. Nixon's testimony.  At trial, defendants sought leave to
introduce evidence of Mr. Nixon's prior criminal convictions.  I
noted that I was not inclined to admit the evidence because the

convictions were either time-barred or misdemeanors not involving
dishonesty or false statements, rendering them inadmissible under
Federal Rule of Evidence 609 for the purpose of attacking the
character for truthfulness of a witness. Tr. at 1105:1-6.
Defendants argued that the convictions were nevertheless
admissible to show Mr. Nixon's motive for testifying against the
police. Tr. at 1105:8-10. I declined to admit the evidence for
this purpose, *see* Tr. at 1114:9-18, but permitted defense counsel
to cross-examine Mr. Nixon on the subject of motive and bias, and
indeed defense counsel used the records of Mr. Nixon's prior
convictions to refresh Mr. Nixon's recollection. Tr. at 1133-35.
In light of the district court's "wide discretion in controlling
the admissibility of testimony and other evidence," *Zahra v. Town
of Southold*, 48 F.3d 674, 686 (2d Cir. 1995), permitting defense
counsel to make use of Mr. Nixon's prior convictions in this way,
but declining to admit direct evidence of the convictions, was a
reasonable exercise of my discretion.

Similarly, defendants claim that I erred by declining to
admit evidence that Mr. Nixon's complaint to the CCRB was
resolved in favor of the defendant officers. However, the crux
of Mr. Nixon's complaint -- his excessive force claim against the
defendant officers -- was deemed "unsubstantiated" by the CCRB,
meaning that the allegations "remained unresolved." *See supra*
n.5. Given the scant probative value of a finding of

"unsubstantiated," precluding the CCRB evidence was not an abuse of discretion.

Having failed to establish that I erred or abused my discretion with regard to the similar act evidence, defendants have equally failed to establish error and prejudice sufficient to warrant a new trial. Accordingly, defendants' Rule 59 motion is denied on this ground.

B.   *Charge Error*

Defendants argue that this Court's failure to charge the jury on nominal damages was prejudicial error. "A jury charge is erroneous if it misleads the jury as to the correct legal standard, or if it does not adequately inform the jury of the law." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 100 (2d Cir. 1999) (citation omitted); *see also United States v. Locascio*, 6 F.3d 924, 939 (2d Cir. 1993) (holding that court of appeals will reverse based on erroneous instruction if charge "as a whole" resulted in prejudice). "Failure to give a requested instruction, if it results in such a misleading charge, constitutes reversible error." *Norville*, 196 F.3d at 100 (citing *Castro v. QVC Network, Inc.*, 139 F.3d 114, 116 (2d Cir. 1998)). "An erroneous instruction, unless harmless, requires a new trial." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 135 (2d Cir. 1999) (citing *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)).

There is no question that in a § 1983 case, if a plaintiff can establish a violation of his constitutional rights, but cannot establish an actual injury proximately caused by that violation, he is "entitled to recover only nominal damages." *Carey v. Piphus*, 435 U.S. 247, 248 (1978); *see also Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 317 (2d Cir. 1999) ("While the main purpose of a § 1983 damages award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury.")  The question presented here is whether, assuming the evidence supports an inference that plaintiff suffered no compensable injury, a defendant is entitled to a nominal damages instruction where the plaintiff has waived his or her right to such an instruction.  I conclude that a defendant has no such entitlement.

Courts have long recognized the importance of a nominal damages award as a means for a plaintiff to vindicate a violation of his or her rights even in the absence of compensable injury. In *Carey v. Piphus,* the Supreme Court introduced the availability of nominal damages in a § 1983 action because of the "importance to organized society" that constitutional rights be respected, even where a plaintiff failed to establish actual injury.  435

U.S. 247, 266-67 (1978).  That the availability of nominal damages, where appropriate, is intended to benefit the plaintiff is apparent from the entitlement language employed with respect to plaintiffs in the relevant case law.  *See, e.g.*, *Robinson v. Cattaraugus County*, 147 F.3d 153, 166 (2d Cir. 1998) ("If a jury finds that a constitutional violation has been proven but that the plaintiff has not shown injury sufficient to warrant an award of compensatory damages, *the plaintiff is entitled to* an award of at least nominal damages as a matter of law") (emphasis added); *Gibeau v. Nellis*, 18 F.3d 107, 110 (2d Cir. 1994) ("even when a litigant fails to prove actual compensable injury, *he is entitled to an award of nominal damages* upon proof of violation of a substantive constitutional right") (emphasis added) (citations omitted); *Kerman v. City of New York*, 374 F.3d 93, 123 (2d Cir. 2004) (where "the plaintiff has not proved compensable injury," he "*is entitled only to nominal damages*") (emphasis added) (citation omitted); *Amato v. City of Saratoga Springs*, 170 F.3d 311, 320 (2d Cir. 1999) ("Precisely *because nominal damages afford a litigant vindication of the deprivation of his constitutional rights*, the decision to dismiss a plaintiff's claim against a municipality because only nominal damages are at stake is error") (emphasis added).

In cases where the proof of plaintiff's injury is slim or contested, however -- and especially in cases where proof of the

alleged constitutional violation hinges on the jury's
determinations of witness credibility -- a nominal damages
instruction affords the jury an opportunity to engage in improper
compromise. In such cases, a plaintiff should be allowed to
determine whether to seek both nominal and compensatory damages,
or whether to remove the option of nominal damages from the
jury's consideration and instead seek an outcome in his case
based on his showing of proximately caused actual injury. To
afford a defendant an equal right to a nominal damages charge in
such a case would preclude a plaintiff from making this strategic
choice.[6]

Defendants argue that the Second Circuit nevertheless
afforded them this right in *Stein v. Board of the City of New
York*, 792 F.2d 13 (2d Cir. 1986), *cert. denied*, 479 U.S. 984

_____

[6] In addition, in many cases, a plaintiff's decision to waive a charge
on nominal damages may result in loss of the plaintiff's claim to attorney's
fees. "Under 42 U.S.C. § 1988(b), in any action to enforce Section 1983, a
district court, in its discretion, may allow the prevailing party, other than
the United States, a reasonable attorney's fee as part of the costs." *Panetta
v. Crowley*, 460 F.3d 388, 399 (2d Cir. 2006). Without the option of a nominal
damages award, if a plaintiff fails to prove compensable injury proximately
caused by defendants' conduct, the plaintiff often loses both his case and his
claim for attorney's fees.
    As defendants point out, however, this was not the situation here. In
October of 2006, defendants made a settlement offer to plaintiff pursuant to
Federal Rule of Civil Procedure 68 in the amount of $15,000. Accordingly, an
award of nominal damages in this case would have barred plaintiff's counsel
from seeking attorney's fees as effectively as a verdict returned in
defendants' favor. *See* Fed. R. Civ. P. 68(d) ("If the judgment the offeree
finally obtains is not more favorable than the unaccepted offer, the offeree
must pay the costs incurred after the offer was made").
    The fact that this particular plaintiff lost nothing by foregoing the
possibility of nominal damages does not alter my conclusion that it is
plaintiff's prerogative to request or to waive a nominal damages charge.
Regardless of the cost or benefit to the plaintiff, a plaintiff is entitled to
determine independently the type of relief he or she will seek.

(1986).  In *Stein*, the plaintiff alleged a violation of his due process rights when he was disqualified as a certified bus driver without receiving adequate notice or a fair hearing.  The jury found that the plaintiff had not received adequate notice and awarded him $15,000 in compensatory damages.  Defendants appealed, arguing that the district judge erred by refusing to instruct the jury "that only nominal damages were appropriate if they found [the plaintiff] would have been discharged . . . even if he had received proper notice from the school board." *Stein*, 792 F.2d at 18.  Noting that the *Stein* jury "did not, nor were they instructed to, determine whether [the plaintiff] would have been discharged . . . regardless of the actions of the state," *id.* at 18-19, and recalling the Supreme Court's holding in *Carey v. Piphus* that proof of injury proximately caused by a deprivation of rights must justify an award of compensatory damages, the Second Circuit held that the district judge "should have instructed the jury to award only nominal damages if it found [the plaintiff] would have been discharged . . . even had he received adequate notice of his disqualification proceeding from the state." *Id.* at 19.

The issue presented in *Stein* was whether the jury awarded compensatory damages without finding that the plaintiff had suffered an actual injury proximately caused by the state's conduct.  If the plaintiff in *Stein* would have been decertified

even if he had received adequate notice, then an award of
compensatory damages would have been impermissible for lack of
proximate causation.  Because the jury did not consider this
issue, the Second Circuit remanded the case for proceedings
consistent with its opinion.  *Stein* does not, therefore, afford
defendants a general right to a nominal damages charge where
appropriate.  *Stein* merely stands for the proposition that in
order to receive compensatory damages, a plaintiff must first
establish both actual injury and proximate causation.  In the
present case, I instructed the jury that in order to recover
compensatory damages, plaintiff must establish that he suffered
an actual injury proximately caused by defendants' conduct.  *See*
Tr. at 1346:12-1347:9; 1348:15-21.  Accordingly, *Stein* is
inapposite here.

Defendants also argue that because my instructions did not
include a nominal damages charge, they did not adequately inform
the jury of the applicable law.  In a somewhat related argument,
defendants claim that the failure to include a nominal damages
charge deprives defendants of the opportunity to litigate the
question of whether the plaintiff suffered an actual injury.
Both of these arguments are without merit.  Although they did not
include a charge on nominal damages, my instructions properly
informed the jury that it could not award compensatory damages if
plaintiff had not established an actual injury proximately

caused by defendants' conduct. *See* Tr. at 1346:12-1347:9;
1348:15-21. Thus, the jury was adequately informed of the law
applicable to plaintiff's requested relief. In addition,
contrary to defendants' argument, the omission of a nominal
damages charge did not deprive defendants of the opportunity to
litigate the question of whether plaintiff suffered an actual
injury. According to my instructions, if plaintiff failed to
establish an actual injury, the jury was not free to award
compensatory damages. Thus, whether plaintiff had established
actual injury was a key issue of fact and was litigated as such.[7]

Even if my failure to instruct the jury on nominal damages
charge were error, however, defendants were not prejudiced by the
missing instruction. The fact that the jury ultimately returned
an award of damages in the amount of $20,000 supports the
conclusion that the jury determined that plaintiff suffered a
compensable injury. The jury was instructed that plaintiff
should be awarded compensatory damages only if he established by
a preponderance of the evidence that he suffered an injury that
was the proximate result of defendants' unlawful acts. The jury
rejected defendants' claim that plaintiff had suffered no injury

---

[7] In their submissions, both parties engage in a substantial discussion
concerning whether the evidence presented at trial was sufficient to support
the inference that plaintiff did not suffer an actual injury, rendering a
nominal damages charge appropriate. *See* Def. Memo. in Supp. at 2-7; Pl.'s
Memo. in Opp'n at 6-9; Def. Reply Memo. at 5-9. Because I conclude that it is
plaintiff's prerogative to request or to waive a nominal damages charge, and
because here, plaintiff waived that charge, I need not consider whether the
evidence at trial would have supported a nominal damages charge.

and awarded the plaintiff $20,000 in compensatory damages.  This
is not a case in which a modest compensatory damages award
reflects a possibility that the jury would have awarded nominal
damages, had the option been available to it.

Defendants argue that the jury's note to the Court "strongly
suggest[s] that the jury did not believe [plaintiff] had suffered
any compensable injury and was confused about how to determine
[plaintiff's] purported damages."  Def. Memo. at 8.  The jury
note read as follows:  "How do we determine compensatory damages?
(A) Guess at expenses?  (B) review some reference material."  Tr.
at 1360:4-6.  While the note does indeed reflect confusion as to
how to determine compensatory damages, the note cannot be read to
show that the jury believed that plaintiff had suffered no
injury.  Pointing out that plaintiff was not seeking an award for
loss of income or other economic losses in this case, defendants
argue that part (A) of the jury's note reflects the jury's belief
that plaintiff only suffered economic losses, not compensable
injury.  Any danger that the jury might have labored under this
misconception was dispelled by my response to the jury's note, in
which I reiterated that plaintiff was not seeking and the jury
could not award compensation for expenses or other economic
losses.  Tr. at 1360:15-21.  Only after this clarification did
the jury return its award of compensatory damages.  Accordingly,
the jury's note does not demonstrate any prejudice to defendants

flowing from the absence of a nominal damages charge.

Finally, defendants argue that the timing of my ruling on the nominal damages charge resulted in prejudicial error warranting a new trial. Noting that Federal Rule of Civil Procedure 51 ("Rule 51") provides, in relevant part, that "the court must inform the parties of its proposed instructions . . . before final jury arguments," defendants complain that they were not aware of my ruling on the nominal damages charge until the charges were actually delivered to the jury. In compliance with Rule 51, however, prior to summations, I held a charge conference to inform the parties of my proposed instructions, during which plaintiff objected to the proposed nominal damages charge. Tr. at 1182:7-9. The fact that I failed to inform the parties of my ruling on plaintiff's objection to the nominal damages charge in advance of summations does not warrant a new trial.[8] *See, e.g.*, *Tyrill v. Alcoa S.S. Co.*, 185 F.Supp. 822, 824, (S.D.N.Y. 1960) ("Noncompliance with [Rule 51] does not, in and of itself, furnish a ground for a new trial or for a reversal of judgment. Those cases which have considered the Rule are in accord in holding that noncompliance does not compel a new trial unless

---

[8] Plaintiff and defendants exchanged and opposed multiple applications relating to jury charges on the eve of October 14, 2008, the day scheduled for instructions. *See* Docket Entries Nos. 219-22, entered on October 13, 2008. On the morning of the day jury charges were given, I responded to the majority of the points raised in these applications, but inadvertently omitted to inform the parties of my ruling on the nominal damages charge. Tr. at 1316:5-1328:4.

material prejudice is shown"); *see also Finkle v. New York, New Haven & Hartford R.R. Co.*, 26 F.R.D. 9, 10 (D. Conn. 1960) ("Rule 51 . . . was intended neither as a trap for the judge nor as an indispensable ritual for all cases").

Defendants were not prejudiced by the timing of my resolution of the nominal damages charge issue. They have pointed to no portion of their summation that they would have altered had they known I would not charge the jury on nominal damages. Instead, defendants refer to their arguments made during summations that plaintiff had suffered no injury, and that rather than establishing injury, evidence of a 911 call introduced at trial "strongly supported the inference that plaintiff was angry about being asked to leave the York College campus[.]" Def. Memo. in Supp. at 10; Tr. at 1265-66; 1273-84; 1286-87. Defendants cannot seriously contend that they would not have made these arguments had they known I would not instruct the jury on nominal damages. Because proof of actual injury is a prerequisite to an award of compensatory damages, about which there was no question that I would instruct the jury, it follows that defendants would have argued that plaintiff had suffered no actual injury regardless of whether the jury was instructed on nominal damages. Having suffered no prejudice, defendants are not entitled to a new trial on this ground.

**CONCLUSION**

For the reasons set forth above, defendants' motion for a new trial is denied.  The Clerk is hereby directed to transmit a copy of the within to the parties and the Magistrate Judge.


SO ORDERED.

Dated:    Brooklyn, NY
          March 2, 2009


                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge